**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ABDUL FAROOK and
THAHMEENA FAROOK,

        Plaintiffs,

v.                                                                          CASE NO. 05-72029
                                                                 HONORABLE DENISE PAGE HOOD

JAMES M. DOUBLE and
DOUBLE TAKE TRUCKING,

        Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment against Plaintiff Thahmeena Farook[1] filed on February 10, 2006. Plaintiff filed a Response to Defendants' Motion for Summary Judgment on March 17, 2006. Defendants filed a Reply to Plaintiff's Response on March 28, 2006. Plaintiff filed a Supplemental Brief on April 11, 2006.

Plaintiff's Complaint, filed on or about March 16, 2005 in Wayne County Circuit Court, alleges negligence against Defendants James M. Double and Double Take Trucking. On May 23, 2005, the Defendants removed the instant matter to this Court pursuant to 28 U.S.C. § 1441.

---

[1] On May 16, 2006, the parties stipulated to, and an Order was entered dismissing all claims of Abul Farook with prejudice and without costs.

**II.     STATEMENT OF FACTS**

At 11:10 A.M. on March 14, 2003, Defendant James Double was traveling northbound on Mound Road, south of its intersection with Seven Mile Road. Dismissed Plaintiff Abul[2] Farook, Plaintiff's father, was driving, and Plaintiff was the passenger in a red minivan traveling in the same lane, in front of Defendant Double. Defendants allege that as Abul Farook and Defendant Double were approaching the intersection, Mr. Farook slammed on his brakes when the light became amber and Defendant Double struck the rear of his vehicle. Plaintiff alleges that Defendant Double's negligence was the cause of his inability to bring his truck to a stop before crashing into the rear of the minivan Plaintiff was a passenger in. Following the accident, the Detroit Police Department arrived, and at Plaintiff's request, called for an ambulance. Both Plaintiff and her father were transported to St. John Hospital for examination. X-rays of Plaintiff were taken and revealed "small loss to the normal curvature of the spine probably due to muscle spasm. There is no evidence of a fracture nor dislocation." (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. D)

Plaintiff testified at her deposition that since the accident she has suffered from aching, shooting and numbing pain in her neck, upper and lower back, shoulder, arms and knees. Plaintiff also stated that this pain, while intermittent, commences as soon as she begins any physical activity. (Defs.' Mot. for Summ. J., Ex. E, Pl.'s Dep., at 19-20). Due to this ongoing pain, Plaintiff has seen a variety of doctors and one chiropractor. Plaintiff, a student at the University of Michigan, went to Student Health Services for six sessions of chiropractic manipulation. These treatments were

---

[2] The case caption is incorrect, Mr. Farook's first name is "Abul."

performed by Dr. Joseph Lupo, D.C., a licensed chiropractor, in March and April of 2003.[3] Additionally, Dr. Lupo submits by way of affidavit that Plaintiff has sustained objectively manifested injuries (Pl.'s Supp. Br., Ex. D, ¶3)[4]. Subsequent to these treatments, Plaintiff returned to Student Health Services complaining of intermittent back pain and difficulty with concentration. On September 8, 2003, Student Health Services performed X-rays and referred Plaintiff to the University of Michigan's Spine Clinic where she underwent an MRI. The MRI revealed "mild loss of cervical lordosis" or curvature of the spine and "mild disk bulges." Dr. J. Steven Schultz, of the Spine Clinic, treated Plaintiff from March 14, 2003 until December 6, 2004, and by way of affidavit lists the objectively manifested injuries Plaintiff has sustained. (Plf.'s Supp. Br., Ex. A, ¶3)[5].

---

[3] Dr. Lupo's diagnosis of Plaintiff at that time was "[a]cute traumatic subluxation of C6 vertebra, concomitant with sprain strain, associated with cervicalgia. Acute traumatic subluxation of T4 vertebra, concomitant with sprain/strain, associated with dorsal neuralgia. Acute traumatic sublaxation of L5 vertebra, concomitant with sprain/strain associated with radiculitis. (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. G)

[4] While the Court will not restate the entirety of Dr. Lupo's findings, it is noteworthy that he found the following objectively manifested injuries:

> Positive tenderness to C4 to C7 and from T1 to T6, spasms from C-4 through T-6 and L5; . . .[m]uscular spasms and pain to palpation to the right middle and cervical range . . .[r]ight leg ½ inch shorter than left leg reflective of pelvic deficiency and postural compromise . . . .

[5] The Court will likewise not list the entire medical findings of Dr. Schultz, but will note that he found Plaintiff to have "a flattening of the thoracic curvature, . . .[p]ositive MRI of the cervical spine which demonstrated degenerative disc disease at multiple levels, most noticeably at C2-3, C3-4, and C6-7 . . . ."

3

**III. STANDARD OR REVIEW**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV.  APPLICABLE LAW & ANALYSIS

Defendants argue Plaintiff's Complaint is governed by Michigan's No-Fault Act, MICH. COMP. LAWS § 500.3101 *et seq*., since this action arises out of a motor vehicle accident allegedly caused by Defendant Double's negligent driving.  An individual is only liable in tort under Michigan's No-Fault Act if the injured party "has suffered death, serious impairment of body function, or permanent serious disfigurement." MICH. COMP. LAWS § 500.3135 (1).  Defendants argue that Plaintiff has failed to establish she suffered a serious impairment of body function within the meaning of the Act, consequently summary judgment in their favor is appropriate.

This Court must determine as a matter of law whether Plaintiff's injuries meet the "serious impairment of body function" threshold set out in Michigan's No-Fault Act so that Plaintiff may maintain her action for noneconomic tort damages.  A serious impairment of body function is defined in the statute as an "objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life. MICH. COMP. LAWS § 500.3135(7). The *Kreiner* Court outlined the necessary inquiry trial courts must make when determining whether a plaintiff has suffered a serious impairment of body function. *See Kreiner* v. *Fischer*, 471 Mich. 109, 131-35, 683 N.W. 2d 611 (Mich. 2004).  First, the Court must determine whether:

> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement . . . .

MICH. COMP. LAWS. § 500.3135(1), (2)(a)(*i*)-(*ii*); *Kreiner*, 471 Mich. at 132.  If the Court determines

there is a material, factual dispute as to "the nature and extent of a plaintiff's injuries" that is necessary to the Court's determination of "whether the plaintiff has suffered a serious impairment of body function the court may not decide the issue as a matter of law." *Id.*

Next, if the Court determines as a matter of law that either there is no factual dispute, or there is a factual dispute but it is immaterial to the determination of whether the plaintiff has suffered a serious impairment of body function, the Court must determine whether an important body function is impaired. *Kreiner*, 471 Mich. at 132. If the Court finds impairment of an important body function, then it must determine whether this "impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient." *Id.*

The last step in the inquiry is for the Court to determine whether the impairment of the important body function affects the plaintiff's general ability to lead her normal life. This requires consideration of whether the plaintiff is "generally able" to lead her normal life. *Kreiner*, 471 Mich. at 131. If she is generally able to do so, then her general ability to lead her normal life has not been affected by the impairment. *Id*. The *Kreiner* Court further stated that the impairment "must affect the course of a person's life," but noted that if interruptions result from the impairment which do not affect "the course or trajectory of a plaintiff's normal life" this is insufficient to the meet the threshold standard under the statute. *Id.* Trial courts must evaluate a plaintiff's life activities before and after the motor vehicle accident, while keeping in mind that all activities will not carry the same significance in a plaintiff's life, and minor changes in the performance of specific activities do not prevent a plaintiff's general ability to lead his or her normal life. *Id*. at 132. The Court also provided a list of nonexhaustive factors that should be considered when making the determination

of whether the course of a plaintiff's normal life has been affected by the impairment.[6] *Id.* at 133-34.

In Defendants' Motion for Summary Judgment, Defendants assert that although there is a dispute regarding the nature and extent of Plaintiff's injuries, this dispute is immaterial to the determination of whether Plaintiff has suffered a serious impairment of body function. In support of this assertion, Defendants argue that Plaintiff has failed to establish an objective manifestation of impairment of an important body function. Defendants further argue that even if Plaintiff establishes an objective manifestation of impairment of an important body function, this impairment has not affected the trajectory of Plaintiff's life.

The Court concludes that as a matter of law, the factual dispute regarding the nature and extent of Plaintiff's injuries is material to whether she has suffered a serious impairment of body function. In support of Defendants' argument that Plaintiff has not suffered an objectively manifested injury, Defendants stress that Plaintiff has undergone a second MRI, which showed "no evidence for disc bulging, impingement or disc herniation." (Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. C). The evidence submitted by Plaintiff, particularly the affidavits submitted by Plaintiff's treating physician and chiropractor, is in conflict with Defendants' contention that she has not suffered an objective manifestation of injury. The conflict between the different doctors illustrates that a material, factual dispute remains as to whether Plaintiff has suffered an objectively manifested injury.

---

[6] The factors include:

> (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. (Footnotes omitted).

Additionally, as to Plaintiff's ability to lead a normal life, Plaintiff testified that after the accident, although she may be able to begin an activity, at times the pain is so intense that she has to stop doing it. (Defs.' Mot. for Summ. J., Ex. E, Pl.'s Dep., at 39-40). Additionally, Plaintiff completed a Patient History Questionnaire during her treatment at Student Health Services, where she listed "housework as her normal physical activities before she had this problem." (Defs.' Mot. for Summ. J., Ex. C). She also testified at her deposition that she can not do any of the housework except folding clothes, and light dusting. *(Id.).* She further testified that because she can not do much of the housework, her husband has to do it, and this has had some effect on her marital relationship. (Defs.' Mot. for Summ. J., Ex. E, Pl.'s Dep., at 52). It appears that housework was a major life activity before and after the accident. As such, the issue of whether her injuries have affected "her general ability to lead a normal life" is not resolvable at this stage in the proceedings. Lastly, Plaintiff testified that the pain she was experiencing was so bad that she was forced to resign from her position as pharmacy technician at the University of Michigan. Plaintiff also supplied a letter of resignation she submitted when she was employed at Kaiser Permanente, which appears to be due to the same health problems. Plaintiff's doctors have also stated that Plaintiff's injuries will affect her general ability to lead a normal life. This is directly in conflict with Defendants' assertion that Plaintiff's injuries have not affected the trajectory of her life. Defendants assert that Plaintiff was able to work after the accident and that her performance was satisfactory. Defendants also state that Plaintiff "testified she felt her injuries from the accident were responsible for her poor performance at the University of Michigan." (Defs.' Mot. for Summ. J., at 5, ¶2). Defendants argue since Plaintiff was a poor student before the accident, the accident had nothing to do with Plaintiff's school performance. Defendants mischaracterize Plaintiff's testimony. Plaintiff stated only that

she believed the accident "had a part" in her being placed on probation, her suspension and poor performance in school.   (Defs.' Mot. for Summ. J., Ex. E, Pl.'s Dep., at 12).

For the above reasons, there is a genuine issue of material fact as to whether Plaintiff has a serious impairment of body function, that is, whether she has suffered an objectively manifested injury that affects her ability to lead a normal life.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [**Docket No. 12, filed February 10, 2006**] is DENIED.

IT IS FURTHER ORDERED that a Status Conference will be held in this matter on October 30, 2006 at 3:15 p.m.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 29, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2006, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

9